Argued October 15, modified November 24, 1914.

## BITNEY v. GRIM.*

(144 Pac. 490.)

**Highways—Abandonment—What Constitutes.**

1. Where a county road supervisor changed the course of a highway, raising an embankment for that purpose about seven feet across the track previously used, causing the travel to cross the premises in question on a course to the right of the original road and nearly parallel thereto, since which time it had been impossible to use the

---

*The general question of the abandonment of highways is discussed in a note in 26 L. R. A. 449.

As to what is necessary to effect a dedication of land as a cemetery or burial plot, see note in 27 L. R. A. (N. S.) 875.

For the removal of remains on abandonment of cemetery, see note in 3 L. R. A. (N. S.) 493.                                   REPORTER.

73 Or.—17

old way, there was an abandonment thereof without reference to the length of time the new conditions had obtained.

**Deeds—Construction—Description—Uncertainty.**

2. A deed conveying certain land for a cemetery described it as commencing at a stake on the north side of a road leading from the land of the grantor to B, thence in an easterly direction 14 rods to a stake, thence northerly forming a regular square 18 rods to a stake, thence westerly 14 rods to a stake, and thence in a southerly direction 18 rods to the place of beginning, containing 1½ acres and 12 rods. *Held,* that such deed, coupled with actual occupation of the ground for the purpose intended, was not void for uncertainty of description.

[As to general descriptions of property in deeds, see note in 66 Am. St. Rep. 59.]

**Dedication—What Constitutes—Cemetery.**

3. Where an owner of land conveyed a certain described tract to trustees to hold as a burying-ground to the trustees and their successors in office forever, such conveyance, together with actual occupation of the land as a cemetery, constituted a dedication of the land for use as a graveyard by acts *in pais.*

**Dedication—Revocation After Acceptance.**

4. Where land is dedicated to cemetery purposes and has been used for that purpose, the dedication cannot be avoided so long as bodies remain buried therein.

**Cemeteries—Removal of Bodies.**

5. The state by the exercise of its police power may properly cause the abandonment of a cemetery, and the removal of bodies therefrom, or friends and relatives may also voluntarily remove their dead to another place of sepulture.

[As to power of municipalities to regulate, prohibit or discontinue cemeteries, see note in 87 Am. St. Rep. 678.]

**Cemeteries—Trustees—Conveyance of Land.**

6. Where land was conveyed to trustees for cemetery purposes, the surviving trustee could not pass title by a deed in his individual capacity, and could only convey it as trustee, subject to the trust.

From Marion: WILLIAM GALLOWAY, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit by L. M. Bitney and J. J. Stangel against Byron J. Grim, Thurston Grim, G. W. Dimick and Marion County, a public corporation, to quiet title to a tract of 19.72 acres of land in Marion County. After the traverse of some allegations of the complaint, the defendants Grim assert, in substance, that a tract

of 1.58 acres included within the boundaries of the premises claimed by the plaintiffs was dedicated by their ancestor as a public burying-ground, in which there are yet buried the remains of some of their friends and relatives. The county of Marion avers that a strip of land 40 feet wide described in the answer is "a county road duly and regularly dedicated to the public as a county road, and that same has been used and traveled by the public for a period of more than 50 years last past." The reply denies the allegations of the answer, and as to the cemetery the plaintiffs claim title by virtue of the deed from the surviving trustee to whom the ancestor of the individual defendants conveyed the premises for cemetery purposes. They further assert that by a condition of the conveyance they agreed to remove any bodies which might remain on the premises, but that they were unable to find any. The Circuit Court made findings of fact and conclusions of law, in pursuance of which a decree was entered dismissing the complaint without costs to either party.                    MODIFIED.

For appellants there was a brief with oral arguments by *Mr. Frank Holmes* and *Mr. Hiram Overton.*

For respondent Marion County there was a brief submitted by *Mr. Ernest R. Ringo,* District Attorney.

For respondents Grim there was a brief with oral arguments by *Mr. John H. McNary* and *Mr. Walter E. Keyes.*

MR. JUSTICE BURNETT delivered the opinion of the court.

Upon a consideration of the whole record it appears to be conceded by the defendants as a fact that

the plaintiffs are the owners in fee simple of the premises described in their complaint except the cemetery mentioned and the county road. These constitute the grounds of dispute between the parties.

1. As to the county road, it clearly appears in the testimony that until a few years prior to the commencement of this suit there was a regularly traveled public road across the premises on the line described in the answer for about 40 years. Less than ten years ago the road supervisor changed the course of the highway, raising an embankment for that purpose about 7 feet high across the track hitherto in use, causing the travel to cross the premises in question on a course to the right of the original road and nearly parallel thereto, since which time it has been impossible to use the old way. This establishes an abandonment of the former road at that place. It is said in 1 Cyc., page 6:

"Time is not an essential element of abandonment. The moment the intention to abandon and the relinquishment of possession unite, the abandonment is complete."

In 1 R. C. L., page 4, it is said:

"Public rights, such as the easement of passage which the public has in respect of a highway, may be lost by abandonment. * * The act of relinquishment of possession or enjoyment must be accompanied by an intent to part permanently with the right to the thing, otherwise there is no abandonment, and the moment the intention to abandon and the relinquishment of possession unite the abandonment is complete, for time is not an essential element of abandonment. Therefore, in any case where a question of abandonment is involved, the important fact to be determined is what was the intention of the person whose rights are claimed to have been abandoned."

Presuming that the road supervisor in changing the course of travel acted by authority, it is clear that filling up the old road with an embankment so as to make it inaccessible evinces the act and the intent to abandon the former way. Hence the county can claim nothing for the old road so far as it affects the premises mentioned in the complaint.

The dedication of the cemetery is evidenced by a deed from John W. Grim and his wife under date of January 29, 1873, whereby in consideration of $1 they conveyed to Alfred Hovingden, John S. Smith and G. W. Dimick, as trustees of Grim's burial ground, and to their successors in office, a certain tract of land described thus:

"Commencing at a stake on the north side of the road leading from the said John W. Grim's to Butteville; thence in an easterly direction fourteen rods to a stake; thence northerly forming a regular square eighteen rods to a stake; thence westerly fourteen rods to a stake; and thence in a southerly direction eighteen rods to the place of beginning, containing one and one-half acres and twelve rods. To have and to hold the said premises as a burying-ground to the said trustees and their successors in office forever."

The testimony shows that even prior to the date of the deed people had buried their dead in that ground, and this continued afterward. Later on, most of the bodies were removed by friends and relatives to another cemetery, but it is the undisputed testimony of witnesses who speak from personal knowledge that there are yet bodies remaining buried in the graveyard thus constituted.

2–5. Objection is made to the deed last referred to for uncertainty of description; but in our judgment it constitutes evidence which, coupled with actual occupation of the grounds for the purpose, amounts to a

dedication of the same for use as a graveyard by acts *in pais.* Having been thus dedicated by the owner of the fee, the premises are subject to that use so long as bodies remain buried there and until they are removed by public authority or by friends or relatives. The state by the exercise of its police power can properly cause the abandonment of a cemetery and the removal of the bodies. Friends and relatives may also voluntarily remove their dead, and if all those who sleep there were thus taken away and its use as a place of sepulture entirely abandoned the character of the ground as a burial place would be lost. But until its depopulation as a city of the dead is complete by one or the other process, the ground dedicated for the last resting place of deceased persons must remain true to its dedication. Although the tract in dispute has been grossly neglected, yet we think the testimony clearly establishes that it yet remains a cemetery and must be respected as such. The following precedents are instructive on the subject here considered: *Tracy* v. *Bittle,* 213 Mo. 302 (112 S. W. 45, 15 Ann. Cas. 167) ; *Roundtree* v. *Hutchinson,* 57 Wash. 414 (107 Pac. 345, 27 L. R. A. (N. S.) 875) ; *Hines* v. *State,* 126 Tenn. 1, (149 S. W. 1058, 42 L. R. A. (N. S.) 1138).

6. Messrs. Hovingden and Smith died several years ago. The plaintiffs introduced a deed from the surviving trustee, G. W. Dimick, as an individual quitclaiming to them the land by description set out in the original deed from J. W. Grim and wife to which allusion has been made. In our judgment the plaintiffs take nothing by this deed from Dimick, for as an individual he had nothing to convey and never had. As trustee he could not be unfaithful to his trust and convey the property for any other purpose than that

for which it was originally dedicated, and he does not attempt to do so.

The conclusion is that the decree must be modified so as to quiet the title of plaintiffs as against the county in respect to the road as described in the defendants' answer, but to dismiss the suit as to the defendants Grim; neither party to recover costs or disbursements from the other in this court.

MODIFIED.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE MOORE concur.

MR. JUSTICE EAKIN dissents.