672 August 3, 2017 No. 38

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

CATHERINE E. GARCIA,
*Respondent on Review.*

(CC 120545265; CA A152842; SC S064236)

On review from the Court of Appeals.*

Argued and submitted March 6, 2017, at Lewis & Clark College, Northwestern School of Law School, Portland, Oregon.

Peenesh H. Shaw, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Rond Chananudech, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, and Nakamoto, Justices.**

NAKAMOTO, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

_____
    * Appeal from Multnomah County Circuit Court, Adrienne C. Nelson, Judge. 278 Or App 639, 377 P3d 596 (2016).

    ** Baldwin, J., retired March 31, 2017, and did not participate in the decision of this case. Brewer, J., retired June 30, 2017, and did not participate in the decision of this case. Flynn and Duncan, JJ., did not participate in the consideration or decision of this case.

**NAKAMOTO, J.**

Defendant was charged with two counts of interfering with a peace officer under ORS 162.247 and one count of resisting arrest under ORS 162.315 for her actions to prevent officers from arresting her boyfriend at a political march.[1] Pursuant to ORS 162.247(3)(a), the statute defining the offense of interfering with a peace officer "does not apply" when the defendant is "engaging in * * * [a]ctivity that would constitute resisting arrest." At trial, defendant moved for a judgment of acquittal on the interfering counts, arguing that ORS 162.247(3) prohibited the state from charging her with both interfering and resisting arrest for the same acts. The trial court denied the motion, and the Court of Appeals reversed, agreeing with defendant that the legislature had intended to preclude double charging. *State v. Garcia*, 278 Or App 639, 649-50, 377 P3d 596 (2016).

On review, we are asked to determine the import of ORS 162.247(3)(a) and whether the trial court erred by denying defendant's motion and submitting both sets of charges to the jury when, as the parties agree, the statute would not permit conviction on both. We conclude that ORS 162.247(3)(a) does not preclude the state from alleging interfering and resisting arrest as alternative charges, even when based on the same acts, and, when the defendant disputes the charges, that the trial court should submit both charges to the jury with an appropriate instruction or verdict form. In this case, the trial court properly submitted all the charges to the jury. Therefore, we reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

## I.   BACKGROUND

We take the facts from the Court of Appeals opinion as supplemented by the trial court record. When, as here, the trial court denies a defendant's motion for judgment of acquittal, we view the facts in the light most favorable to the state. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431

---

[1] Throughout this opinion, unless otherwise noted, we cite the 2011 versions of the relevant statutes, which were the versions in force when the events in this case took place.

(1994), *cert den*, 514 US 1005, 115 S Ct 1317, 131 L Ed 2d 198 (1995).

Defendant and her boyfriend, Storaasli, participated in a May Day march in Portland. At a certain point, the permit for the march lapsed and the marchers were directed to leave the streets. Storaasli disregarded the order and remained in the streets to dance. As responding police officers sought to subdue Storaasli and to arrest him, defendant ran towards him. In response, an officer punched defendant in the chest, causing her to fall to the ground. Recovering, defendant proceeded to insert herself between the officers and Storaasli by wrapping her arms around Storaasli's waist. While doing so, defendant called to other marchers to help her "unarrest" Storaasli. The officers repeatedly ordered defendant to release Storaasli, which she ignored. Ultimately, the officers succeeded in separating defendant from Storaasli and arrested both of them.

As relevant here, defendant was charged by information with two counts of interfering with a peace officer, ORS 162.247, and one count of resisting arrest, ORS 162.315. The state based the two interfering counts on the same incident, but assigned to each a different statutory violation: (1) a failure to obey a lawful order and (2) an attempt to prevent an officer from his lawful duties with regard to another person. The resisting arrest charge simply alleged that defendant "intentional[ly] resist[ed]" officers "in making an arrest."

At trial, the testimony presented in the state's case-in-chief revealed that the resisting arrest charge did not relate to defendant's own arrest but to her resistance to Storaasli's arrest. Correctly concluding that all three charges related to defendant's actions in response to the officers' efforts to arrest Storaasli, defendant moved for a judgment of acquittal on both interfering charges. By its own terms, the statute criminalizing and defining interfering with a peace officer, "does not apply in situations in which the person is engaging in *** [a]ctivity that would constitute resisting arrest under ORS 162.315." ORS 162.247(3)(a). Defendant reasoned that ORS 162.247(3)(a)

prohibited the submission of the interfering counts to the jury because they flowed from the same activity giving rise to the resisting arrest charge.[2] The state did not disagree that defendant could not be convicted on both the interfering charges and the resisting-arrest charge; however, it argued that all counts should be submitted to the jury. The trial court denied defendant's motion for judgment of acquittal.

Following the presentation of her case, defendant again sought a judgment of acquittal on the interfering charges. The state objected to the form of motion, noting that the issue was more appropriately brought as a pretrial demurrer or post-conviction motion in arrest of judgment. The state argued that, because the statute "does not apply to conduct constituting resist[ing] arrest," the trier of fact must first make the factual finding that resisting arrest occurred. Defendant responded that she could not have filed a demurrer because the state's information was insufficient to identify the basis for the charges, but she offered to craft her request as a motion to dismiss so as to "carry out the legislature's instruction" in ORS 162.247(3).

The trial court deferred ruling on defendant's alternative motions and heard additional argument the next day. The state reaffirmed its position that all charges should be submitted to the jury. However, the state clarified that, if the jury came back with guilty verdicts on both the interfering charges and the resisting arrest charge,

> "the [interfering] charges [would be] subsumed by the jury's finding with respect to resisting arrest. And, therefore, it may be, as I mentioned previously, a merger issue, a legal issue with respect to the Court's entry of judgment, because the jury has found *** that the defendant did commit the three offenses, but it would be left to the Court as a legal matter which charge to enter judgment on."

---

[2] Defendant also argued that her conduct could be characterized as "passive resistance" under ORS 162.247(3)(b). Because the Court of Appeals agreed with defendant on her first argument—that the interfering charges should not have been submitted to the jury under ORS 162.247(3)(a)—it declined to reach her passive resistance argument. *Garcia*, 278 Or App at 646 n 3. On review, defendant has not raised that second argument before this court, and we do not address it.

In defendant's opinion, however, "it's actually the prosecutor's duty in a situation like that to charge what they are going to charge and follow the available laws."

Agreeing with the state, the trial court denied defendant's renewed motion for judgment of acquittal on the interfering counts and submitted all three counts to the jury. The jury was instructed to resolve the two sets of charges in the alternative: "[I]f you find in a particular situation that [defendant] was engaged in activity that would constitute resisting arrest and passive resistance, you must return a verdict of not guilty as to the interfering with a peace officer for the same situation." The jury subsequently convicted defendant on the count for interfering with the officers' lawful duties, but it acquitted her on the remaining interfering charge and the resisting arrest charge.

Before the Court of Appeals, the parties presented arguments mirroring their positions below. Defendant asserted that ORS 162.247(3)(a) barred the state from charging interfering and resisting arrest based on the same acts. In defendant's view, if, as here, the state charged interfering based on defendant's actions in resisting arrest, then ORS 162.247(3)(a) should prevent the interfering count from being submitted to the jury. For its part, the state contended that nothing in the text of ORS 162.247(3)(a) precluded double charging; instead, it urged, the legislature intended subsection (3)(a) to act as a defense to the charge of interfering. The state reasoned that, for the trial court to grant a motion for judgment of acquittal on the interfering charge, it must necessarily conclude "that no rational fact-finder could find the defendant innocent of resisting arrest, and [the court] would be ruling that she was guilty of that crime as a matter of law." *Garcia*, 278 Or App at 646. It further explained that, without making that determination, a trial court that withdrew the interfering charges would supplant the jury's role to determine whether defendant committed any of the offenses.

After examining the text and legislative history of ORS 162.247, the Court of Appeals concluded that "the legislature intentionally excluded conduct that constitutes resisting arrest from the definition" of the crime of interfering with a peace officer. *Garcia*, 278 Or App at 649. As a

result, the court explained, "the legislature intended to pro-
hibit the state from charging a defendant with both resisting
arrest and [interfering] based on the same conduct." *Id*. The
court looked to the legislative history of ORS 162.247, which
was originally enacted in 1997, *State v. McNally*, 361 Or 314,
326, 392 P3d 721 (2017), and cited as particularly persua-
sive the testimony from drafters of the 1999 amendment to
subsection (3), determining that the legislature had wanted
to "prevent the offender from being doubled up with two
charges: both resisting arrest and [interfering]." *Garcia*, 278
Or App at 649-50. As a result, the court concluded that "the
state cannot charge a defendant with both resisting arrest
and [interfering] based on the same conduct" and that the
trial court erred when it presented the interfering charges
to the jury, because "[o]nce it became clear that the state
had engaged in the double charging that the legislature
intended to prevent, the trial court had to give effect to the
legislature's intent by dismissing the [interfering] counts."
*Id*. at 650-51. The Court of Appeals disagreed that dismissal
of the interfering counts would result in the trial court sit-
ting as trier-of-fact and determining whether defendant was
guilty of resisting arrest; rather, the trial court needed only
to decide "whether the state had engaged in prohibited dou-
ble charging." *Id*. at 654 n 4.

        The Court of Appeals also concluded that when and
how a defendant should challenge the double charges would
depend on when it was evident to the defendant that the
two charges arose from the same set of acts. *Id*. at 651-52.
Although a defendant could demur to the charging instru-
ment when the shared factual basis for the state's charges
of interfering and resisting arrest was clearly alleged at the
outset, the court recognized that it is also permissible for
a defendant to challenge the charges later at trial, when
the shared factual basis for the charges becomes clear. *Id*.
Consistent with those determinations, the Court of Appeals
reversed defendant's conviction for interfering with a peace
officer. *Id*. at 655.

## II.   ANALYSIS

        The issue on review concerns the circumstances in
which it is proper for the state to prosecute a defendant for

both interfering with a peace officer and resisting arrest for the same acts, a question implicating what the legislature intended to have happen through its enactment of ORS 162.247(3)(a). We understand the state's argument for reversal to be that, contrary to the Court of Appeals' holding, ORS 162.247(3)(a) bars a defendant's *convictions*—but not the state's *charges*—for both interfering and resisting arrest when the charges are based on the same acts and that, as a result, the trial court must submit both interfering and resisting arrest charges to the jury when the defendant disputes those charges, as in this case.[3]

Defendant acknowledges that the state may charge a defendant with both interfering and resisting arrest at the outset of a case, based on potentially different acts by the defendant for each charge. But defendant maintains that ORS 162.247(3)(a), correctly understood in light of legislative history, prevents the trial court from ultimately submitting both charges to the jury if it turns out that those charges are based on the same acts by the defendant. In other words, defendant explains, the state could prosecute a defendant for acts amounting to interfering that occurred when no arrest was taking place and also prosecute the defendant for different acts amounting to resisting arrest while an arrest was happening—even if both charges arise out of a single encounter with law enforcement officers—but the state cannot legitimately present both charges to the jury when they are based on one set of acts that the defendant allegedly committed.

Thus, the parties present two questions: whether, as the Court of Appeals concluded, the state is barred from charging a defendant for both crimes based on the same acts and, if not, whether and when both charges may be submitted to the jury. As we explain, we conclude that (1) the legislature most likely intended ORS 162.247(3)(a) to permit

---

[3] In its briefing, the state argued that ORS 162.247(3)(a) describes a defense to the crime of interfering with a peace officer. However, at oral argument, the state retreated from that position, asserting instead that the statute requires the trial court to present both interfering and resisting arrest charges to the jury with an instruction for the jury not to reach the interfering charge if the jury convicts on the resisting arrest. Thus, the resisting arrest subsection can be understood as an exception to a charge of interfering with a peace officer.

the state to charge a defendant with both interfering with a peace officer and resisting arrest based on the same acts, given the differing mental state elements of interfering and resisting arrest, and (2) when the defendant's guilt is a disputed matter, the trial court should submit both charges to the jury with an appropriate instruction or verdict form.

A.  *Charging Interfering with a Peace Officer and Resisting Arrest*

We begin with the conclusion that the Court of Appeals reached: that ORS 162.247(3)(a) prohibits the state from "double charging," or charging a defendant with both interfering and resisting arrest for the same acts. That is an issue of statutory construction, and we turn to our well-establish principles guiding that task. Following the framework established in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), as modified by *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), we seek to determine the legislature's intent in promulgating ORS 162.247(3)(a), and, to aid us in that goal, we review the text, context, and legislative history of the statute. Because it is the intent of the legislature as expressed through its formal enactments that matters, rather than the intent of one or two individual legislators, the text and context of the statute are the most compelling evidence of the legislature's intent. *Gaines*, 346 Or at 171.

The crime of interfering with a peace officer is defined by ORS 162.247, which states:

"(1)   A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer ***:

"(a)   Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer or parole and probation officer from performing the lawful duties of the officer with regards to another person; or

"(b)   Refuses to obey a lawful order by the peace officer or parole and probation officer.

"(2)   Interfering with a peace officer or parole and probation officer is a Class A misdemeanor.

"(3)  *This section does not apply in situations in which the person is engaging in:*

"*(a)  Activity that would constitute resisting arrest under ORS 162.315*; or

"(b)   Passive resistance."

(Emphasis added.) By its terms, ORS 162.247(3)(a) prevents the statute defining interfering from "apply[ing]" in a certain situation, namely, when the defendant "is engaging in *** [a]ctivity that would constitute resisting arrest." That provision also refers to the statute defining the offense of resisting arrest, ORS 162.315, which provides, in part:

"A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest."

ORS 162.315(1).[4]

The phrase "does not apply" in ORS 162.247(3) comes closest to suggesting that the legislature may have intended to bar alternative charging of resisting arrest and interfering with a peace officer. For the most part, the parties in their briefing dispute whether the phrase provides a defendant with a defense to an interfering charge, with the state arguing that the defense does not bar double charging and instead requires the jury to determine whether the defense applies, as is the case with other defenses. However, as noted earlier, the state has refocused its analysis to argue

---

[4] The interfering and resisting arrest offenses cover similar conduct but differ based on whether the circumstances involved an arrest. As defined, resisting arrest requires a showing that the defendant knew the status of the peace officer and that the officer's activity consisted of making an arrest; that the defendant acted to resist the arrest; and that defendant intentionally resisted. *See State v. Olive*, 259 Or App 104, 110-12, 312 P3d 588 (2013) (reviewing legislative history of ORS 162.315 and concluding that, "[t]o form the intent to resist another person in making an arrest, a person must know that an arrest is taking place"). In contrast, to be convicted of interfering under ORS 162.247(1)(a), the state must show that the defendant knew the status of the officer; acted in a manner that prevents, or attempts to prevent, the officer from performing the lawful duties of the officer with regard to another person; and did so intentionally. Thus, interfering does not require proof that an arrest took place, that the defendant knew of the arrest, or that the defendant intentionally took action to resist the arrest. It is the absence of those elements—which center on the defendant's knowledge of an arrest—that distinguishes interfering from resisting arrest.

that, whether "does not apply" indicates a defense or something else, such as an exception to the offense of interfering, the phrase does not address charging and does not prohibit the state from alternatively charging resisting arrest by virtue of subsection (3)(a). We agree with the state that the text of subsection (3)(a) cuts against the conclusion that the state cannot charge both interfering and resisting arrest.

Normally, the state may bring charges against a defendant in the alternative, even with mutually exclusive charges. *See generally State v. Savastano*, 354 Or 64, 81, 96, 309 P3d 1083 (2013) (recognizing a prosecutor's discretion to bring particular charges); *see also State v. Tron*, 39 Or App 603, 605, 592 P2d 1094 (1979) (prohibition on convictions for alternative counts does not bar the state from charging in the alternative). But ORS 162.247(3) does not contain an express provision that the state is barred from double charging resisting arrest and interfering based on the same acts, and elsewhere in the criminal statutes defining offenses, the legislature has chosen to expressly limit double charging. For example, ORS 166.370, which defines the offenses of possession of a firearm or dangerous weapon in public buildings, provides that "[n]otwithstanding the fact that a person's conduct in a single criminal episode constitutes" multiple statutory violations for possession in a public building and in a school, the state "may charge the person with only one of the offenses." ORS 166.370(7). It is apparent that the legislature could have, but did not, provide an express provision in ORS 162.247(3)(a) similarly barring alternative or double charging.

And although defendant and the Court of Appeals view subsection (3)(a) as presenting a legal question for the trial court—whether the interfering charges is based on the same conduct that is charged as resisting arrest—the text of the resisting-arrest provision in subsection (3)(a) suggests otherwise. By its terms, the phrase engaging in "activity that would constitute resisting arrest" suggests that interfering does not apply to the extent that the defendant's activity amounted to resisting arrest. That phrase suggests something more than a legal question concerning whether there is an identity between the defendant's physical acts relied on by the state for each of the two different charges: it

suggests that the offense of interfering does not apply to the defendant's activity when the defendant has committed the offense of resisting arrest by engaging in that activity.

"Activity that would constitute resisting arrest," ORS 162.247(3)(a), sounds much like the legislature's use of the phrase "an act that *** would constitute a violation" in ORS 419C.005(1), a juvenile delinquency statute describing the juvenile court's jurisdiction. Under ORS 419C.005(1), the juvenile court has exclusive original jurisdiction in any case involving a person under 18 years of age "who has committed an act that is a violation, or that if done by an adult would constitute a violation, of a law or ordinance ***." This court has explained that ORS 419C.005(1) provides the court with jurisdiction when the juvenile either has committed an act that is a violation of state law or when the act would be a crime, but for the juvenile's age. *See State v. McCullough*, 347 Or 350, 358-59, 220 P3d 1182 (2009) (internal quotation marks omitted) (the latter "refers to the few crimes" that a juvenile "cannot actually commit" because age is an element of the crime). Both nouns—"activity" and "act"—connote action. *See Webster's Third New Int'l Dictionary*, 20 (unabridged ed 2002) ("act" can mean "process of doing **:** action" (boldface in original)); *id.* at 22 ("activity" can mean "physical motion or exercise of force," as in "vigorous or energetic action").[5]

The offense of resisting arrest requires proof not only of the defendant's physical acts but also of the defendant's accompanying mental state. If the legislature had wanted to indicate that double charging for the same physical acts is barred, regardless of whether the defendant's conduct actually amounted to commission of the offense of resisting arrest, including by proof of the defendant's mental state, the legislature could have (1) expressly barred double charging or (2) used wording in ORS 162.247(3)(a) suggesting a focus on the defendant's acts rather than the commission of an offense, *e.g.*, describing "activity [or acts] that might constitute resisting arrest" rather than "activity that would constitute resisting arrest." In our view, by stating that activity "would constitute" resisting arrest, the

---

[5] In their briefing, neither party argued that "activity" held significance in the textual analysis.

legislature most likely intended that the offense of interfering would not apply when the defendant's actions constituted commission of the offense of resisting arrest.

Our textual analysis is confirmed by the legislative history of ORS 162.247(3)(a). Senate Bill (SB) 423 (1997), which became ORS 162.247, was proposed by Representative Floyd Prozanski in response to a Court of Appeals case, *City of Eugene v. Kruk*, 128 Or App 415, 875 P2d 1190 (1994). In *Kruk*, the Court of Appeals struck down a Eugene ordinance prohibiting interfering with an officer. *Id*. at 417. The court explained that the ordinance did not have the exception for passive resistance contained in the existing resisting arrest statute and, thus, "the [two] laws [were] in conflict." 128 Or App at 421 (quoting *City of Portland v. Jackson*, 316 Or 143, 151, 850 P2d 1093 (1993)).

Before the Senate Committee on Crime and Corrections, Prozanski testified that SB 423 "has a caveat that this statute would not be applicable in the making of an arrest" because resisting arrest was already criminalized. Tape Recording, Senate Crime and Corrections Committee, SB 423, Feb 19, 1997, Tape 13, Side A (statement of Rep Floyd Prozanski). He noted, "It is not my intent to create a new statute that's going to give another means of citing someone for that same conduct that is already regulated by state law under the resisting arrest." *Id*. Rather, Prozanski suggested, the interfering statute was intended to address

> "a situation where you have an officer who is involved in something less than performing the arrest but they are forced to divert their attention from what could be a very serious threatening safety reason for that officer or anyone else to deal with somebody that is really out of line and out of place for the context of what's occurring."

*Id*. Following Prozanski's explanation, the legislature enacted the bill without changes to the relevant text. As originally enacted in 1997, subsection (3) stated that "[t]his section does not apply in situations in which a peace officer is making an arrest." Or Laws 1997, ch 719, § 1.

In 1999, the legislature amended subsection (3), Or Laws 1999, ch 1040 § 7, and it has remained unchanged since

then. Before the House Committee on Judiciary, Legislative Counsel John Horton described the need for House Bill (HB) 3374 to address an overbroad understanding of ORS 162.247 (1997):

> "The language that is being deleted is language that says this section does not apply in situations in which *** 'the peace officer is making an arrest.' *** The original intent, as I understand it, of that subsection 3 was to say that if you are charging a person with resisting arrest that we are trying to prevent the offender from being doubled up with two charges: both resisting arrest and interfering with a peace officer. In practice, what has happened is that the language 'a peace officer is making an arrest' *has been construed a bit too broadly*, and so what this would do is simply provide that, if the activity constitutes resisting arrest under that statute then the person cannot be charged with interfering with a peace officer, but, if the activity *did not constitute an offense* under the other statute, then they could be charged under this crime of interfering with a peace officer."

Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 178, Side B (statement of Legislative Counsel John Horton) (emphasis added).

Although defendant's argument is based on a plausible interpretation of the legislative history from 1997 and 1999, that interpretation does not square with the text of ORS 162.247(3), and we view the legislative history in a different way that is consistent with the statutory text. In defendant's view, the legislative history reveals that the legislature intended to avoid doubling the charges of resisting arrest and interfering for the same conduct. Defendant's argument is a plausible one, given that Prozanski referred to "citing someone" in 1997 and Horton used the term "charged" in explaining the purpose and effect of the 1999 amendment while adding his understanding that the 1997 statute was intended to "prevent the offender from being doubled up with two charges." But defendant's understanding of the legislative history is difficult to reconcile with the text of the statute, which indicates that the offense of interfering is not available only when the defendant has committed the offense of resisting arrest.

In light of Horton's description of the purpose of the 1999 amendment to ORS 162.247(3), we view the legislature's intention to be consistent with our textual analysis: the legislature intended to prohibit the state from obtaining a conviction on both interfering and resisting arrest charges for the same activity. Neither party explains the import of Horton's description of a need in 1999 to address what had become an overly broad construction of the original version of subsection (3) and then his explanation of what the amendment would do: "simply provide that, if the activity constitutes resisting arrest under that statute then the person cannot be charged with interfering with a peace officer, but, if the activity did not constitute an offense under the other statute, then they could be charged under this crime." Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 178 Side B (statement of Legislative Counsel John Horton). If that "too broadly" construed 1997 version of the statute was hampering prosecutions of defendants for conduct that might be either interfering or resisting arrest, depending on what the jury determined—a plausible conclusion—then it would make sense to narrow that understanding through the 1999 amendment by clarifying that the interfering statute would not apply to acts that would establish that the defendant was committing resisting arrest. Defendant's understanding of the legislative history not only does not comport with the text of the statute, but it does not comport with the apparent problem that the legislature aimed to fix.

B.   *Procedure in the Trial Court*

Given our conclusion that the state may bring alternative charges of resisting arrest and interfering against a defendant based on the same physical acts, we go on to a procedural question: how must a trial court handle the charges at trial? The state urges that the trial court in this case correctly submitted both sets of charges to the jury with an instruction, because whether defendant's activity amounted to resisting arrest was disputed and subject to a factual determination by the jury. We agree.

To find a defendant guilty of resisting arrest, the jury must necessarily evaluate mental state facts that are

difficult for a prosecutor to identify at the charging stage, or even, at times, in advance of submission to the jury. And complementary defenses such as self-defense or defense of others might offer additional questions of fact for the jury to consider, such as whether the defendant's belief that he or she acted in self-defense or in defense of another was reasonable. *See State v. Wright*, 310 Or 430, 436, 799 P2d 642 (1990) (concluding that "if an officer making an arrest uses excessive force, the permissible use of physical force by the arrestee is limited to the use of such force as is reasonably necessary under the circumstances"). A prosecutor should not be forced to elect one charge or the other in the face of conflicting versions of events presented by the witnesses to the event and ultimately uncertainty about whether an element going to the defendant's mental state or a defense to resisting arrest can be proven. Thus, a trial court must submit both the resisting arrest and the interfering charges to the jury, even if based on the same actions taken by the defendant, when the defendant contests culpability for resisting arrest.

From a procedural perspective, to avoid the possibility of an inconsistent verdict, when the trial court submits both charges to the jury, the court should do so with instructions or with the verdict form. The jury can be instructed to address the resisting arrest charge first, followed by the interfering charge only if the jury does not find the defendant guilty of resisting arrest.

In this case, the trial court properly submitted the two sets of charges to the jury and instructed the jury on the alternative charges. The trial court instructed the jury that, if it found, "in a particular situation that [defendant] was engaged in activity that would constitute resisting arrest and passive resistance," then it "must return a verdict of not guilty as to the interfering with a peace officer for the same situation." The trial court's submission of the charges to the jury was consistent with the statute, and its instruction, apparently understood by both the parties and by the jury, clarified that the interfering and resisting arrest charges were to be considered as alternatives.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.