JAMES, J.
*239 Defendant appeals a judgment of conviction for interfering with a peace officer, ORS 162.247(1)(a), assigning error to the trial court's denial of his motion for judgment of acquittal. Defendant argues that the state did not present sufficient evidence that defendant intentionally prevented, or attempted to prevent, officers from performing their duties.[1] The state argues in response that the evidence was sufficient to support findings that defendant prevented or attempted to prevent officers from performing their duties. We affirm.
We review a trial court's denial of a motion for a judgment of acquittal viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the state to determine whether a rational trier of fact could find each element of the offense beyond a reasonable doubt. State v. Rader , 348 Or. 81, 91, 228 P.3d 552 (2010) ; State v. Pitts , 259 Or.App. 372, 373, 314 P.3d 324 (2013), rev. den. , 354 Or. 840, 326 P.3d 77 (2014). Consistent with that standard, the relevant facts are as follows.
Late in the evening in February 2016, Officers Rule, Gaither, and Kinney responded *763 to a call about a disorderly person. Officer Rule arrived on scene first and located that person, McGarrity, in a yard. When Officer Gaither arrived, he assisted Rule in removing McGarrity from the yard. McGarrity was belligerent and combative, and officers believed he was under the influence of some unknown intoxicant. Kinney arrived shortly after McGarrity was removed from the yard. After McGarrity was removed from the yard, defendant appeared and walked out of the same yard. Gaither approached defendant and asked him to remain at a distance and stay at that distance. After walking over to the officers and seeing his grandchild's father, McGarrity, in handcuffs, defendant returned to his house and came back to the scene with a cell phone and began to record video of McGarrity's arrest. Defendant was yelling and shouting at the officers while he recorded, and also appeared to be under the influence of an unknown intoxicant. *240 At least one officer, Rule, stopped what he was doing during McGarrity's arrest to walk over to defendant because defendant remained belligerent and was moving around while recording. Rule informed defendant that it was fine to record the officers, but that he needed to remain where he currently was in relation to the arrest and stop making noise, because it was drawing officer attention to him while they were arresting McGarrity. Gaither also reminded defendant to stay at a distance and inquired whether defendant had a weapon on him. Defendant disclosed that he had a pocketknife. Gaither removed the pocketknife from defendant's pocket and threw it some distance away from defendant and the scene of the arrest. After that interaction, defendant did not remain where he was; he moved in a semi-circle around the officers. During defendant's circling movements, he varied his proximity to the arrest, approaching to within approximately 10 feet to 40 feet away from McGarrity. Defendant testified at trial that he was moving around to get a better angle for the video because the headlights from the officers' vehicles made it difficult to get a good image. During his circling and recording, defendant continued to yell and swear at the officers and act generally belligerent. He was reminded that he needed to stay away from the officers, and at least one officer told him that he was interfering. Defendant did not change his behavior. Eventually, Rule and Gaither arrested defendant. He was charged with interfering with a peace officer, ORS 162.247(1)(a). That statute provides, in relevant part:
"(1) A person commits the crime of interfering with a peace officer * * * if the person, knowing that another person is a peace officer * * *:
"(a) Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer * * * from performing the lawful duties of the officer with regards to another person[.]"
ORS 162.247(1)(a). The state did not charge defendant under paragraph (1)(b). That paragraph provides:
"(1) A person commits the crime of interfering with a peace officer * * * if the person, knowing that another person is a peace officer * * *:
*241 "* * * * *
"(b) Refuses to obey a lawful order by the peace officer * * *."
ORS 162.247(1)(b).
At the close of his bench trial, defendant challenged the sufficiency of the evidence as to the act and mental-state elements of the crime. Defendant was subsequently convicted. On appeal, defendant renews those same arguments, asserting that there was insufficient evidence that he prevented or attempted to prevent officers from performing their duties. Specifically, he argues that "prevents" as used in ORS 162.247(1)(a) was intended to describe acts that create a physical obstacle that stops an officer from performing a duty, and merely causing a disturbance or distraction in the area of an arrest is not sufficient to "prevent" the arrest. The state argues to the contrary that, although physical conduct is required, "prevents" can include physical conduct that hinders or distracts officers from performing their duties.
The Supreme Court has explained that "to be convicted of interfering under ORS 162.247(1)(a), the state must show that the defendant knew the status of the officer; acted in a manner that prevents, or attempts *764 to prevent, the officer from performing the lawful duties of the officer with regard to another person; and did so intentionally." State v. Garcia , 361 Or. 672, 681 n. 4, 399 P.3d 444 (2017). Before we can determine if the evidence was sufficient for a rational trier of fact to find that defendant acted in a manner that "prevent[ed] or attempt[ed] to prevent" the officers from performing their duties, we must first determine the meaning of that term as used in ORS 162.247(1)(a).
In State v. Lam , 176 Or.App. 149, 155-56, 29 P.3d 1206 (2001), we began an analysis of what "prevent" means in ORS 162.247(1)(a) by examining the text. Id. There, we explained,
"[t]he Oregon Revised Statutes do not define 'prevent.' Its common meaning is 'to hold or keep back (one about to act).' Webster's Third New Int'l Dictionary 1798 (unabridged ed. 1993) (noting that this usage often occurs with 'from'). In *242 one sense, 'prevent' 'implies an insurmountable obstacle or impediment.' Id. This definition carries a connotation of physical conduct, because speech does not insurmountably keep or hold a person back in any literal sense. However, prevent also is synonymous with forestall, which means 'to intercept or stop something in its course.' Id. Speech alone arguably could hold back a peace officer by inducing the officer to stop performing his or her duties. Because there are two plausible interpretations of the scope of the phrase 'acts in a manner that prevents or attempts to prevent,' it is ambiguous. See State ex rel. OHSU v. Haas , 325 Or. 492, 503, 942 P.2d 261 (1997) (concluding that the scope of the term 'employee' in OEC 503(1)(d) was ambiguous); State ex rel. Juv. Dept. v. Saechao , 167 Or.App. 227, 231, 2 P.3d 935, rev. den. , 331 Or. 283 [18 P.3d 1101] (2000) (concluding that the scope of the phrase 'participating with' in ORS 166.015 was ambiguous)."
Id.
As we reasoned in Lam , the meaning of "prevent" could be to create an insurmountable obstacle, or to forestall or hinder. We noted that the statute includes both "prevents" and "attempts to prevent," which could suggest that the legislature intended to reach the full range of conduct between entirely stopping officers from performing their duties to hindering them from performing their duties, or attempting to do so. We then analyzed the legislative history of ORS 162.247, and concluded that, regardless of the precise meaning of the word "prevents" as used in ORS 162.247, the statute was not intended to reach speech alone; rather, physical conduct was required for a defendant to be subject to the statute. Lam , 176 Or.App. at 157, 29 P.3d 1206 ("In light of the unequivocal and uncontroverted statement of intent by the drafter of ORS 162.247, we conclude that the statute was not intended to reach speech alone."); see also Denucci v. Henningsen , 248 Or.App. 59, 76, 273 P.3d 148 (2012) ("We conclude that [Representative Prozanski's] statement indicates that the noise of a person's voice is not physical conduct capable of violating the statute.").[2]
*243 We did not ultimately determine in Lam precisely what "prevents" in ORS 162.247 encompasses, nor have we since. We turn now to that task, employing our traditional method of statutory analysis focusing on the text, context, and legislative history. State v. Gaines , 346 Or. 160, 164, 206 P.3d 1042 (2009). Our prior construction of a statute is always relevant to our statutory analysis. State v. Bryan , 221 Or.App. 455, 459, 190 P.3d 470 (2008), rev. den. , 347 Or. 290, 219 P.3d 592 (2009).
As noted above, in Lam , after analyzing the text, we concluded that the word "prevents" as used in ORS 162.247(1)(a) was ambiguous when determining whether "prevents" means to create an insurmountable obstacle or to forestall. Because in Lam we determined that there was ambiguity regarding the meaning of "prevent" as used in ORS 162.247(1)(a), we pick up where we left off in Lam , and now consider the text in light of its broader context.
*765 Other sections of the criminal code use the term "prevent" in a manner that provides helpful context. "Although * * * there is nothing that precludes the legislature from defining the same terms to mean different things in the same or related statutes, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently." State v. Cloutier , 351 Or. 68, 99, 261 P.3d 1234 (2011). In State v. Hansen , 253 Or.App. 407, 290 P.3d 847 (2012), we interpreted the term "prevent" in the context of ORS 162.325(1)(d) -the hindering prosecution statute.[3] There, we held "prevent" to mean stopping an occurrence from happening. Id. at 413, 290 P.3d 847. We reasoned that because that statute used both "prevent" and "obstruct," "the legislature signaled its intent to capture two *244 different concepts-impeding progress and stopping it completely." Id.
Similarly, in State v. Smith , 259 Or.App. 36, 41, 312 P.3d 552 (2013), we interpreted the term "prevent" in the context of ORS 165.572, interfering with making a report.[4] There, we held that "[a]lthough 'prevent' and 'hinder' [could be] synonymous * * *, the legislature's decision to use both terms suggests that it intended the statute to cover two different effects."[5] Id.
ORS 162.247(1)(a), unlike the statutes at issue in Hansen and Smith , does not juxtapose "prevent" against another term like "obstruct" or "hinder." However, it does include the language "attempts to prevent," which similarly signals a legislative intent to capture distinct concepts. Generally, an "attempt" involves "intentionally engag[ing] in conduct which constitutes a substantial step" towards the completion of the act. State v. Hennagir , 246 Or.App. 456, 460, 266 P.3d 128 (2011), rev. den. , 352 Or. 33, 281 P.3d 611 (2012) (brackets in original); see also ORS 161.405 (defining attempt as "intentionally engag[ing] in conduct which constitutes a substantial step toward commission of the crime").
Thus, an "attempt to prevent" encompasses actions that, while being a substantial step towards that objective, do not stop progress completely. Because we " 'normally seek to avoid an interpretation of a statute that results in redundancy,' " Hansen , 253 Or.App. at 414, 290 P.3d 847 (quoting State v. Kellar , 349 Or. 626, 636, 247 P.3d 1232 (2011) ), we understand "prevent" as used in ORS 162.247(1)(a) to mean a physical action taken that keeps something from happening, and "attempts *245 to prevent" to encompass physical actions that do not completely stop officers from performing their lawful duties but constitute a substantial step towards that end. Sometimes, such an attempt could result in a distraction, but merely creating a distraction, without the intent to perform an action objectively capable of stopping the performance of duties is not the type of prevention ORS 162.247(1)(a) addresses.
We now apply the above definition of "prevent" to this case. Defendant engaged in the physical conduct of repeatedly approaching *766 the officers in a manner that they testified raised officer safety concerns and thus required them to stop attending to McGarrity and ask defendant more than once to back away from the arrest site. Two officers testified that they temporarily stopped participating in the arrest of McGarrity to warn defendant about his behavior. Critically for this case, the officers specifically told defendant that his circling and approaching the officers was interfering with what they were doing with McGarrity. After that warning-after specifically being told that his behavior was interfering with the arrest-defendant continued to circle and approach, not stopping his behavior until he was arrested.
On this record, viewed in the light most favorable to the state as is appropriate on a motion for judgment of acquittal, the evidence was insufficient to establish that defendant acted in a manner that prevented the officers from performing their duties. Defendant never interposed himself between the officers and the arrestee, or otherwise performed a physical action to keep the arrest from occurring-and, in fact, the arrest was accomplished. However, the evidence was sufficient to create a question of fact for the factfinder on whether defendant attempted to prevent the officers from performing their duties. Considering that defendant was specifically told that his behavior was being interpreted by the officers as interfering with their work, a reasonable trier of fact could interpret defendant's continuation of that behavior as defendant intentionally engaging in that act as a substantial step towards preventing the officers from performing their lawful duties.
Affirmed.

We reject defendant's unpreserved federal constitutional claim without further discussion.

In Denucci , the court was comparing language in ORS 162.247 to language in ORS 162.257, a similar statute enacted after ORS 162.247, concerning interfering with firefighters or emergency medical services providers.

ORS 162.325 reads, in relevant part:
"(1) A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, or with the intent to assist a person who has committed a crime punishable as a felony in profiting or benefiting from the commission of the crime, the person:
"* * * * *
"(d) Prevents or obstructs, by means of force, intimidation or deception, anyone from performing an act which might aid in the discovery or apprehension of such person[.]"

ORS 165.572 reads, in relevant part:
"(1) A person commits the crime of interference with making a report if the person, by removing, damaging or interfering with a telephone line, telephone or similar communication equipment, intentionally prevents or hinders another person from making a report to a law enforcement agency, a law enforcement official or an agency charged with the duty of taking public safety reports or from making an emergency call as defined in ORS 403.105."

In State v. Goodall , 219 Or.App. 325, 334, 183 P.3d 199 (2008), when analyzing ORS 133.033(2)(a), we determined that "prevent" meant to stop something from happening. ORS 133.033 predates ORS 162.247, but ORS 133.033 does not use any description beyond "prevent" such as "obstruct," "hinder," or "attempt to prevent."